UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
WAYNE JAMES, on behalf of himself and
all others similarly situated,                                          **DOCKET NO.: CV-25-4387**

                              Plaintiff,

              -against-

COUNTY OF SUFFOLK, SUFFOLK COUNTY
CIVIL SERVICE COMMISSION, SUFFOLK
COUNTY POLICE DEPARTMENT, HEATHER JONAS,
in her individual and official capacity, STANLEY PELC,
in his individual and official capacity, JANE DOES 1-4,
who are known to Defendants but not to Plaintiff in their
individual and official capacities,
                                                                       **CLASS ACTION COMPLAINT**

                              Defendants.                              **JURY TRIAL DEMANDED**
-------------------------------------------------------------------X

Plaintiff, **WAYNE JAMES**, on behalf of himself and a **class** of similarly situated

individuals, by and through his attorneys, the Law Offices of Frederick K. Brewington, as and for

the following *Complaint* and state and allege as follows:

**PRELIMINARY STATEMENT**

1.      This is a civil action seeking monetary relief, a declaratory judgment, compensatory

and punitive damages, disbursements, costs and fees for violations of the Plaintiff's rights brought

pursuant to 42 U.S.C. § 1983 and New York State Human Rights Law. The claims are for the

violation of PLAINTIFF's substantive due process rights pursuant to the Fourteenth Amendments

of the United States Constitution, due to rampant and long-standing racial discriminatory actions of

the DEFENDANTS COUNTY OF SUFFOLK, SUFFOLK COUNTY CIVIL SERVICE

COMMISSION, and SUFFOLK COUNTY POLICE DEPARTMENT.

2.     Specifically, the PLAINTIFF alleges that the DEFENDANTS negligently, wantonly, recklessly, intentionally, and knowingly sought to and did wrongfully deprive PLAINTIFF of his Constitutional rights, pursuant to the above mentioned statute and cause of action by committing acts under color of law and depriving the PLAINTIFF of rights secured by the United States Constitution and laws of the State of New York.

3.     PLAINTIFF alleges that DEFENDANTS have used racially discriminatory, racially bias, illegal and improper practices to actively deny PLAINTIFF the ability to become a Suffolk County Police Officer. Since 2016, PLAINTIFF has applied, applied, and applied again to become a Suffolk County Police Officer, to which he has been denied time and time again due to the racially discriminatory testing and evaluation processes. The actions of Defendants have intentionally, negligently, wrongfully, willfully, and improperly deprived PLAINTIFF the ability to become a Suffolk County Police Officer due to his race and color.

4.     PLAINTIFF further alleges that DEFENDANTS COUNTY OF SUFFOLK, SUFFOLK COUNTY CIVIL SERVICE COMMISSION and SUFFOLK COUNTY POLICE DEPARTMENT were negligent in training, hiring and supervising its investigators, psychologists, evaluators, employees, representatives, and/or agents, in charge of the Suffolk County Police Officer training, evaluation, and hiring process. DEFENDANTS COUNTY OF SUFFOLK, SUFFOLK COUNTY CIVIL SERVICE COMMISSION and SUFFOLK COUNTY POLICE DEPARTMENT had knowledge of or should have reasonably known about the overt racially bias training, evaluation, and hiring process. In fact, DEFENDANTS are actively involved and complicit in such racially discriminatory and unlawful actions by intentionally failing to change and/or improve the bias on-boarding process, in regards to prospective Black Suffolk County Police Officers.

2

## JURISDICTION

5.      The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1343.

6.      Venue in the Eastern District of New York is proper under 28 U.S.C. § 1391, based on the fact that Defendants conduct business and can be found in this District. Furthermore, the place where the events and violations herein alleged occurred was in Suffolk County.

## PARTIES

7.      PLAINTIFF WAYNE JAMES (hereinafter "Mr. James" or "Plaintiff") is a 34 year old Black man, who resides in the County of Nassau, State of New York, at all times relevant herein is a citizen of the United States. The proposed class includes all non-white applicants to become police officers in Suffolk County who were disqualified from consideration by Defendants during the psychological exam process. (the "Class").

8.      DEFENDANT COUNTY OF SUFFOLK (hereinafter "County" or "Defendant County") is and was a duly constituted municipal corporation of the State of New York, and is and was the employer of the Suffolk County Police Department.

9.      DEFENDANTS, SUFFOLK COUNTY CIVIL SERVICE COMMISSION is a municipal civil service commission that operates pursuant to the New York State Constitution, New York State Civil Service Law and Suffolk County Rules and Regulations. Civil service administers the entry-level police officer examination and is responsible for coordinating all phases of the qualifying process for law enforcement positions.

10.     DEFENDANT SUFFOLK COUNTY POLICE DEPARTMENT (hereinafter "Suffolk Police Department ") is, and was an entity/agency of the COUNTY OF SUFFOLK, located at 30 Yaphank Ave., Yaphank, New York 11980.

3

11.    DEFENDANT HEATHER JONAS (hereinafter "Defendant Jonas" or "Defendant Heather Jonas"), was, at the times relevant to this Complaint, an employee of Defendant County and Defendant Commission, under color of law. Specifically, DEFENDANT HEATHER JONAS is the Appeal Psychologist, who oversees  the psychology exam appeals for individuals applying to become Suffolk County Police Officers.  JONAS was a decision maker and set standards and made determinations that were adopted by Suffolk County as its practices and policy in dealing with applications for the Suffolk County Police Department.

12.    DEFENDANT STANLEY PELC (hereinafter "Defendant Pelc" or Defendant Stanley Pelc"), was, at all times relevant to this Complaint, an employee of Defendant County and Defendant Commission, under color of law. Specifically, DEFENDANT STANLEY PELC was the Director of Examinations and a decision maker to whom Mr. James wrote when Plaintiff was wrongfully disqualified in 2022.  Pelc made decisions, set standards and issued determinations that were adopted by Suffolk County as its practices and policy in dealing with applications for the Suffolk County Police Department.

13.    DEFENDANT JANE DOES 1-4, was, at the times relevant to this Complaint, employees of Defendant County and Defendant Commission, under color of law. Specifically Defendant Jane Does 1 and 2 were white female members of the panel, along with Defendant Jonas, who wrongfully found Mr. James to not be qualified in 2018. Specifically Defendant Jane Does 3 and 4 were white female members of the panel, along with Defendant Jonas, who wrongfully found Mr. James to not be qualified in 2022.

**FACTS**

14.     Mr. Wayne James (hereinafter "Mr. James" or "Plaintiff") is a 34 year old Black man, who resides in Nassau County.

15.     Since Mr. James was a young boy, it was, and still is, his dream to be a police officer.

16.     Mr. James has a journal entry from 1997 *when he was just a child*, where a young Wayne writes: "When I grow up, I want to be a cop...I [am] going to be a good cop or a great cop."

17.     As a youth, Mr. James observed police officers render aid to his brother after a catastrophic motorcycle accident. Unfortunately, Mr. James' older brother would succumb to his injuries, but the officers who attempted to save his brother, forever lives with him.

18.     Growing up, Mr. James had a next door neighbor, Sandra Richard, who was a Nassau County Police Officer. Officer Richard would later become Sergeant Richard in the Nassau County Police Department.

19.     Mr. James has immense admiration for Ms. Richard. Mr. James was able to see, first hand, the contributions Ms. Richard made to the community.

20.     In pursuit of his dream to become a police officer, after high school Mr. James joined the police activity league and began teaching children judo.

21.     This relationship has continued to this day. In fact, Ms. Richard wrote one of the character letters Mr. James presented to Defendant Suffolk County Civil Service Commission.

22.     In his journey to fulfill his dream of becoming a police officer, Mr. James went to college, and in 2009, he earned an Associate Degree in Criminal Justice.

23.     In 2012, Mr. James earned his Bachelor's Degree from York College in Sociology, with a minor in Pre-Law.

24.     Mr. James officially began his career in law enforcement in 2014 as a Public Safety Officer at Nassau Community College.

25.     Since 2014, Mr. James has completed two (3) law enforcement academies. Mr. James completed the NCPD academy in June of 2018, the Nassau County Sheriffs Academy in August 2019, and he completed the Nassau County Police Department again in June of 2024.

26.     In 2018, Mr. James completed the approximately six (6) month Nassau County Police Academy.

27.     Once Mr. James passed the Nassau County Police Academy, he was promoted to a Peace Officer status at Nassau Community College.

28.     In 2019, Mr. James completed the Nassau County Sheriff's Academy.

29.     Mr. James was previously employed as a Correction Officer at Nassau County Sheriff's Department from June 2019 to November 2023.

30.     Despite completing two police academies, in which Mr. James had to complete and pass several written, physical, and psychological exams, racial bias and discriminatory practices engaged in by Defendants have stifled Mr. James' dream of being a Police Officer.

**Attempt #1 to Become a Suffolk County Police Officer**

31.     In 2016, Mr. James applied to become a Suffolk County Police Officer.

32.     Mr. James passed the written test with a 95.

33.     Mr. James passed all physical exams, including but not limited to: physical training and hearing/eye exams.

34.    When Mr. James took his psychology evaluation/exam, he received a not qualified determination.

35.    Mr. James appealed that determination and took another psychology evaluation before a panel of three psychologists.

36.    On September 27, 2016, Mr. James passed the psychology evaluation before the panel and received a qualified determination.

37.    The only exam Mr. James had remaining was the Background information investigation/check.

38.    Mr. Patrick Maloney, a white male, was the background investigator and conducted the examination of Mr. James.

39.    Mr. Maloney asked Mr. James how his record was so clean and was surprised by the lack of disciplinary issues and speeding tickets.

40.    Mr. Maloney called Mr. James "a robot" because his record was so clean.

41.    Then the investigation took a turn. Mr. Maloney started inquiring about whether Mr. James had traveled outside the country. Mr. James responded yes.

42.    Mr. James told Mr. Maloney he had visited the Dominican Republic, Brazil and Costa Rica.

43.     Mr. Maloney went on to ask what Mr. James did in the foreign countries.

44.    Among many things, Mr. James informed that while in the foreign countries, he met women, entertained them, spending no more than thirty dollars each time and had consensual sex with them.

7

45.    Mr. Maloney then instructed and directed Mr. James to write that he had engaged in prostitution (paying for sexual favors), while in the foreign countries.

46.    Mr. James vehemently denied that he engaged in any such prostitution and/or money exchanges for sexual favors.

47.    Mr. Maloney said, in sum and substance, "Its no big deal" and "Prostitution is legal in those countries."

48.    Due to, and only due to, the intentional direction and instruction of his investigator, Mr. Maloney, Mr. James complied with his order.

49.    Subsequently, Mr. James' psychology exam that he passed on September 27, 2016 was overturned due to the new information Mr. Maloney instructed him to write.

50.    Based upon knowledge and belief, Mr. Maloney has never instructed any non-Black applicants to intentionally alter fabricate responses on their background investigation.

51.    Mr. Maloney intentionally instructed Mr. James to alter his response and write such information because he knew it would lead to him being he would be disqualified. This level of bias and prejudice was due to no reason other than Plaintiff is Black.

52.    Because of this disqualification, Mr. James had to hire counsel to appeal the not qualified determination. Mr. James, with legal counsel, initiated an Article 78 petition to appeal the not qualified determination.

53.    Ultimately, in or about September of 2018, the Article 78 action was settled.

54.    Mr. James then retook his psychology exam.

55.    Although Mr. James had passed his psychology exam on September 27, 2016, he had to take another psychology evaluation/exam.

8

56.    When Mr. James took his psychology exam to become a Suffolk County Officer in 2018, he was found to be not qualified.

57.    Not deterred, Mr. James, once again, appealed that determination to a panel.

58.    The panel of three, consisting of Defendant Heather Jonas, a white woman, and two other women, Defendant Jane Does 1 and 2, found Mr. James to be not qualified.

59.    Absolutely nothing in Plaintiff's psychological, neurological, emotional mindset or otherwise, had changed between 2016 and 2018.

60.    Defendants are utilizing the testing process to become a Suffolk County Police Officer as a barrier to discriminatorily block Plaintiff from fulfilling his childhood dream of becoming a police officer.

**Attempt #2 to Become a Suffolk County Police Officer**

61.    After going through such an emotionally draining process, Mr. James was immensely affected but continued on his journey to become a police officer.

62.    In 2019, Mr. James, once again, applied to become a Suffolk County Police Officer.

63.    Mr. James, once again, passed the written exam with a 95.

64.    Mr. James, once again, passed all physical exams, including but not limited to: physical training and hearing/eye exams.

65.    Mr. James, this time, passed his background investigation, ironically, with the same investigator that he had back in 2017 (Mr. Maloney).

66.    Unlike the first time when Mr. James applied, where the background investigation (where Maloney intentionally and wrongfully directed Mr. James to write he engaged in prostitution) was the final exam, this time it was the psychology exam.

9

67.    Mr. James took the psychology exam and was founded not qualified for the position of Suffolk County Police Officer that he was being considered for.

68.    Mr. James, once again, appealed this determination to the panel of three.

69.    Once again, on August 19, 2022, the panel led by Defendant Heather Jonas, with two other white women, Defendant Jane Does 3 and 4, discriminatorily found Mr. James to be not qualified.

70.    To have Heather Jonas, who led the panel that wrongfully disqualified Mr. James in 2018, back on the panel in 2022, was intentionally targeting and racially discriminatory by Defendants to keep Black persons from becoming a Suffolk County Police Officer.

71.    The process was and is clearly flawed and tainted.

72.    Subsequent to his wrongful disqualification, Mr. James wrote a letter to Defendant Suffolk County Civil Service Commission to change their determination.

73.    On September 7, 2022, Defendant Stanley Pelc, Director of Examinations, wrote Mr. James stating that there was no discrepancy in Defendants' determination and violated Plaintiff's rights by supporting the prior discriminatory decision and made decisions that were final and binding which were adopted by Suffolk County.

74.    On October 10, 2022, Mr. James sought an independant psychologist, Joseph A. Stopino, Psy.D. to determine if he was psychologically qualified to be a Suffolk County Police Officer.

75.    In his report, Mr. Stopanio determined that: "**There is sufficient evidence to support Mr. James' application for employment as a Suffolk County Police Officer and thus he should be granted a review with an investigator, psychologist and review panel that have not**

**previously been involved in his past evaluations and who are not biased by the results of these evaluations.**" (Emphasis Added).

76.     Defendants have made a concerted effort to discriminatorily deny Mr. James, a Black man, the opportunity to be a Suffolk County Police Officer.

77.     Upon information and belief, Defendant Heather Jonas handles all Suffolk County Police Officer psychology panel appeals.

78.     Mr. James, who has been in law enforcement for ten (10) years and counting, has a clean record as Mr. Maloney stated, no disciplinary issues, passed three police academies, passed multiple written exams to become a Suffolk County Police Officer, passed all the physical exams to become a Suffolk County Police Officer, passed the background investigation and even passed Suffolk County's psychology evaluation once before, is being intentionally denied his rightful opportunity to become a Suffolk County Police Officer due to his race.

79.     Every time Mr. James gets to the final step of the process to become a Suffolk County Police Officer, whether it was the background exam in 2017 or the psychological evaluation in 2018 or the psychological exam in 2022, he has been intentionally and discriminatorily denied by Defendants.

80.     However, Mr. James' experience is not a new one for Black persons attempting to become Police Officers on Long Island.

81.     On May 27, 2021, *Newsday* published an alarming report on the lack of diversity in the Nassau and Suffolk County Police Departments.

82.     That report described some of the statistical data set forth above, noting, for example, that of the 6,539 Black applicants who applied from 2012-2019, only 67 were hired.

83.     *Newsday* reported that in the six years following Suffolk County's 2015 hiring exam, SCPD hired only 16 Black officers out of 1,419 Black applicants.

84.     Similarly, *Newsday* reported that at each stage of the hiring process, Nassau County disqualified Black applicants at a higher rate than white applicants.

85.     *Newsday* reported "Under the Justice Department's supervision, the 40-year effort to increase minority representation helped change the Nassau and Suffolk forces from 95% white to roughly 85% white. Over the same period, population trends bolstered the minority presence in both counties and reduced the white share of the populations — to 68% in Suffolk and 60% in Nassau, according to Census estimates. As a result, neither department mirrors the community it patrols."

86.     *Newsday* reported "A company that described itself as experts in psychological risk management' has evaluated the mental and emotional fitness of candidates for police jobs in Suffolk County for two decades. **Its clinicians disqualified Black candidates nearly three times more often than white applicants** and Hispanic candidates at double the rate of whites." (emphasis added).

87.     *Newsday* reported that during the 2015 hiring pool, Suffolk County recommended 84% of white psychological test takers to be hired, compared to 57% of Black psychological test takers.

88.     Stated conversely, Suffolk County recommended against hiring 43% of the Black psychological test takers, as opposed to 16% of white test takers.

89.     It is of no coincidence the discriminatory treatment Mr. Wayne endured through the intentional actions of Defendants.

90.     For eight (8) years, Mr. James has endured a very traumatic, demoralizing, disturbing, hostile, and racially targeted attack from Defendants.

91.     As Mr. James' goal was to become a police officer, despite the fact that he has been humiliated and embarrassed by Defendants' actions, he has been undaunted in his dream.

92.     Any form of therapy or mental health treatment would further negatively affect his chances of fulfilling his dream as a police officer.

93.     Despite all of the systemic racial targeting of Defendants, Mr. James has not given up on his dream to be a police officer.

### Attempt #3 to Become a Suffolk County Police Officer

94.     In the summer of 2023, for the third time, Mr. James took the written exam to become a Suffolk County Police Officer.

95.     Unfortunately due to the anxiety and the wrongful actions of Defendants, Mr. James did not do well on the written portion of the exam which he had done well on previously.

96.     Due to the racially discriminatory practices of Defendants, Mr. James was denied the rightful opportunity to be a Suffolk County Police Officer.

97.     Fortunately, the discriminatory actions of Defendants did not deter Mr. James from fulfilling his dream as he stated in 1997 to become a police officer.

98.     In November of 2023, Mr. James signed his conditional offer to become a Nassau County Police Officer and proceeded to the Nassau County Police Academy.

99.     In June of 2024, Mr. James, despite the discriminatory actions of Defendants became a Nassau County Police Officer. While this was a positive step to Mr. James fulfilling his childhood dream, it is seriously marred by the discriminatory actions of these Defendants

## CLASS ACTION ALLEGATIONS

100.    This class action is brought pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (c)(4) seeking liability-phase injunctive and declaratory relief on behalf of a class of all non-white applicants seeking to become Suffolk County police officers who were disqualified for consideration by Defendants during the post-exam process in violation of § 1983 and the NYSHRL. Plaintiffs reserve the right to amend the definition of the Class based on discovery or other factual or legal developments.

101.    Plaintiffs also bring this Class Action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) seeking monetary damages and other make-whole relief on behalf of a Class of all non-white applicants seeking to become Suffolk County police officers who were disqualified for consideration by Defendants during the exam process in violation of § 1983 and the NYSHRL. Plaintiffs reserve the right to amend the definition of the Class based on discovery or other factual or legal developments.

102.    Officer Wayne James is a member of the Class he seeks to represent.

103.    The members of the Class identified herein are so numerous that joinder of all members is impracticable.

104.    There are questions of law and fact common to the Class, and these questions predominate over any questions affecting only individual members, including:

(a)     Whether Defendants' hiring policies or practices for police officers in Suffolk County discriminate against non-white police officer applicants;

(b)     Whether Defendants' hiring policies and practices for police officers in Suffolk County violate § 1983 and/or the NYSHRL;

(c)     Whether Defendants, using as a pretext their hiring criteria, intentionally discriminate against non-white applicants seeking to become police officers in Suffolk County;

(d)     Whether Defendants' hiring practices have a disparate impact on non-white applicants seeking to become police officers in Suffolk County; and

(e)     Whether equitable remedies, injunctive relief, and other relief for the Class are warranted to address the discriminatory effects of Defendants' misconduct.

105.    The claims of Officer Wayne James are typical of the claims of the Class.

106.    Officer Wayne James will fairly and adequately represent and protect the interests of the members of the Class.

107.    Plaintiff has retained counsel competent and experienced in complex class actions, employment discrimination litigation, and the intersection thereof.

108.    Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole. The Class Members are entitled to injunctive relief to end Defendants' common, uniform, unfair, and discriminatory policies and practices.

109.    Class certification is also appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The Class Members have been damaged and are entitled to recovery as a result of Defendants' common, uniform, unfair, and discriminatory

policies and practices.

## AS FOR A FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983-
### EQUAL PROTECTION VIOLATION, 14TH AMENDMENT, MUNICIPAL VIOLATIONS AGAINST ALL DEFENDANTS

110.    The allegations set forth above are incorporated here.

111.    All relevant actions taken by Defendants and those with delegated authority to act on their behalf were taken under color of law.

112.    Defendants have engaged in an intentional and systematic policy, pattern, and/or practice of discrimination against Plaintiff and the Class in violation of the Equal Protection Clause through the hiring process, including by, among other things:

113.    Adopting subjective hiring criteria that allow for disproportionate disqualifications of non-white applicants on the basis of race and/or national origin; and Applying the subjective hiring criteria in a manner that does, in fact, disqualify non-white applicants at a disproportionate rate on the basis of race.

114.    Specifically, *Newsday* reported that in Suffolk County, for the years of 2019 and 2020, only 4% of the recruited officers were Black people of color while 72% of the recruited officers were white.

115.    Further, in the seven years studied by Newsday, white applicants composed a total of 62% of the would-be officers and were awarded 82% of the jobs.

116.    Black people of color represented 9% of the applicants but secured 4% of the jobs.

117.    This clear disparity represents and concretely exemplifies *both* the differential treatment of similarly situated applicants as well as the *de facto* pattern and practice of DEFENDANT COUNTY, and DEFENDANT SUFFOLK COUNTY POLICE DEPARTMENT.

118.    This shocking statistical different cannot be attributed to non-discriminatory factors.

119.    The injury sustained by Plaintiff and the Class resulted from a municipal policy or custom, including, among other things:

120.    Defendants adopted a *de facto* policy or custom of using their hiring criteria to pretextually disqualify non-white applicants; The Civil Service, as a "final decision maker," rendered the decision disqualifying Plaintiff and the Class from the hiring process; Defendants failed to train and/or supervise their agents and representatives to impartially conduct and evaluate the stages of the hiring process; and Defendants failed to address discriminatory practices in their hiring process, despite being on notice of the data reflecting disproportionate hiring and disqualification on the basis of race through the consent decree and other public sources.

121.    These policies are intended to, and do have the effect of, denying Plaintiff and the Class equal opportunities to become police officers in Suffolk County, as set forth in detail above. Similarly, Defendants' selection criteria, improper training and supervision of individuals involved in the hiring process, and willful indifference to the disparities in hiring results on the basis of race demonstrated by its own data constitutes a deliberate policy and practice of intentional discrimination.

122.    As a direct result of Defendants' discriminatory policies and/or practices as described above, Plaintiff and the Class have suffered damages including, but not limited to, lost employment opportunities and lost past and future income, compensation, and benefits.

123.    The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited by the Equal Protection Clause.

124.    Defendants, intentionally and knowingly, as an act of discrimination based on race, and color, refused to hire and/or wrongfully disqualified individuals such as the Plaintiff, from becoming a police officer because of their race and color.

125.    Defendants COUNTY OF SUFFOLK, SUFFOLK COUNTY CIVIL SERVICE COMMISSION, and SUFFOLK COUNTY POLICE DEPARTMENT were further aware of the systematic practice of unlawful race and color based discrimination within the Suffolk County Police Department, yet failed to address, remedy, or change said systematic practices, which work to the detriment of Plaintiff Mr. James and other persons situated similarly.

126.    Defendants COUNTY OF SUFFOLK, SUFFOLK COUNTY CIVIL SERVICE COMMISSION, and SUFFOLK COUNTY POLICE DEPARTMENT failed to adequately train or supervise the individuals who were responsible for hiring qualified individuals for Suffolk County Police Officer positions; specifically, Defendants COUNTY, COMMISSION, and DEPARTMENT failed to adequately train supervisors on discrimination laws, and failed to exercise adequate supervision over supervisors in order to ensure that discrimination laws were respected.

127.    These discriminatory acts committed by Defendants COUNTY OF SUFFOLK, SUFFOLK COUNTY CIVIL SERVICE COMMISSION, SUFFOLK COUNTY POLICE DEPARTMENT, Defendant JONAS, Defendant PELC, and Defendant Jane Does 1-4, who were responsible for policy decisions and the enforcement thereof, Plaintiff suffered, and continues to suffer, diminished employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer distress, humiliation, and embarrassment.

128.    Plaintiff and the Class request relief as hereinafter described.

18

**AS AND FOR A SECOND CAUSE OF ACTION**
**14TH AMENDMENT: SUBSTANTIVE DUE PROCESS CLAUSE**

129.    All allegations set forth above are incorporated here.

130.    DEFENDANTS, in enacting their de facto policy, interfered with Plaintiff's established right to pursue his chosen career.[1]

131.    Plaintiff and Class members, engaged in the testing the Suffolk County Police Department demanded of them.

132.    Upon passing the written and physical fitness portions of the hiring process, Plaintiff and members of the class "failed" the psychological portion of their examination and thus were disqualified due to discriminatory animus.

133.    The *de facto* policy of DEFENDANTS interfered with Plaintiff and Class members right to pursue a lawful career for which they would have otherwise been eligible but for DEFENDANTS discriminatory animous.

134.    As a result, Plaintiff and Class members, suffered loss of wages, embarrassment, humiliation, and are forced to undergo the same discriminatory process, for which they risk the same chance of discriminatory denial, if they wish to pursue the same career interest again.

135.    The denial of Plaintiff's and Class right to pursue their chosen career interest was not done due to any lawful power vested in DEFENDANTS.

---

[1] Indeed, the right to earn a livelihood pursuing a lawful occupation is a fundamental right protected by the Constitution, and many authorities consider the preservation of such right to be one of the inherent or inalienable rights protected by the Constitution. Likewise, the courts have recognized that the right to follow a chosen profession free from unreasonable governmental interference comes within the "liberty" (and "property") concept of the U.S. Const. Amend.
V.6 16A Am. Jur. 2d Constitutional Law § 616

## AS AND FOR A THIRD CAUSE OF ACTION
## <u>NYS HUMAN RIGHTS LAW, N.Y. EXECUTIVE LAW § 296</u>
### (Disparate Treatment)

136.    The allegations set forth above are incorporated here.

137.    Plaintiffs and the Class plead that Defendant is liable under the NYSHRL based on a disparate treatment theory of liability.

138.    Defendant discriminated against Plaintiffs and the Class in the police officer hiring process based on their race and/or national origin.

139.    Plaintiff and the Class are members of a protected class pursuant to New York Executive Law § 296.

140.    Plaintiff and the Class were qualified to become police officers in Suffolk County.

141.    Plaintiff and the Class were subjected to the adverse employment action of refusal to hire.

142.    The adverse employment action taken against Plaintiff and the Class occurred under circumstances giving rise to an inference of discrimination.

143.    The policies and procedures adopted and applied by Defendant were implemented and enforced with an intent to discriminate against non-white applicants because of their race and/or national origin and does so discriminate against them as described above.

144.    The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited by the NYSHRL.

145.    Plaintiff and the Class request relief as hereinafter described.

## AS AND FOR A FOURTH CAUSE OF ACTION
## <u>NYS HUMAN RIGHTS LAW, N.Y. EXECUTIVE LAW § 296</u>
### (Disparate Impact)

146.    The allegations set forth above are incorporated here.

147.    Plaintiff and the Class plead, in the alternative, that Defendant is liable for discrimination under the NYSHRL based on a disparate impact theory of liability.

148.    Defendant's use of the existing hiring policies and procedures has had an adverse impact on non-white applicants to the Police Department.

149.    As a direct result of Defendant's discriminatory policies and/or practices as described above, Plaintiffs and the Class have suffered damages including, but not limited to, lost employment opportunities and lost past and future income, compensation, and benefits.

150.    The foregoing policies, pattern, and/or practices have had an unlawful disparate impact on non-white applicants in violation of the NYSHRL.

193.    Plaintiffs and the Class request relief as hereinafter described.

### PRAYER FOR RELIEF

**WHEREFORE, the following relief is requested:**

• Certification of the case as a class action on behalf of the proposed Class;

• Designation of Plaintiff James as representative of the Class;

• Designation of Representative Plaintiff's counsel of record as Class Counsel;

• A declaratory judgment that the practices complained of herein are unlawful and violate the Equal Protection Clause and the NYSHRL;

• A declaratory judgment that Defendant's refusal to hire Plaintiff and Class Members for the positions for which they were each qualified was unjustified and based on race and/or national origin;

• A preliminary and permanent injunction against Defendant and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in policies, patterns, and/or practices that discriminate against Plaintiff or Class Members based on their race and/or national origin or participation in this lawsuit;

• An order that Defendant institutes and carries out policies, practices, and programs

21

that provide equal employment opportunities for all employees regardless of race and/or national origin, and that they eradicate the effects of their past and present unlawful employment practices;

• An order requiring Defendant to develop and institute objective and validated standards for conducting the hiring process that do not have a disparate impact on applicants on the basis of race and/or national origin;

• An order appointing a monitor to ensure that Defendant comply with the injunction provisions of any decree ordered by the Court;

• An order retaining jurisdiction over this action to ensure that Defendant comply with such a decree;

• Back pay (including interest and benefits) for Plaintiff and Class Members;

• As to each Count in excess of five million ($5,000,000.00) dollars per plaintiff as well as other damages, costs and attorney's fees.

• All damages sustained as a result of Defendant's conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

• Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

• Pre-judgment and post-judgment interest, as provided by law; and

• Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

**A JURY TRIAL IS HEREBY DEMANDED**

Dated: Hempstead, New York
        August 6, 2025

                              Respectfully Submitted,

                              LAW OFFICES OF
                              FREDERICK K. BREWINGTON

                    By:     *Frederick K. Brewington*
                            FREDERICK K. BREWINGTON
                            Attorneys for Plaintiff
                            556 Peninsula Boulevard
                            Hempstead, New York 11550
                            (516) 489-6959